TENTATIVE RULING

ISSUED BY JUDGE LAURA S. TAYLOR

Debtor:       MICHAEL J. PRATT

Number:       19-00271-LT13

Hearing:      02:00 PM   Wednesday, May   1, 2019

Motion:       MOTION FOR SANCTIONS FILED ON BEHALF OF DOES 1-22 (fr 4/17/19)

Hear.

**Background**

The underlying State Court litigation began in 2016 when numerous plaintiffs brought several State Court actions against Debtor Michael J. Pratt ("Pratt" or "Debtor") and defendants GirlsDoPorn.Com, Andre Garcia, Matthew Wolfe, BLL Media, Inc., BLL Media Holdings, LLC, Domi Publications, LLC, EG Publications, Inc., M1MMedia, LLC, Bubblegum Films, Inc., Oh Well Media Limited, Merro Media, Inc., Merro Media Holdings, Inc., and Merro Media Holdings, LLC (collectively, with Debtor "Defendants"; collectively, without Pratt, "Non-Debtor Defendants"), asserting various claims including fraud, misappropriation of likeness, and intentional infliction of emotional distress. These State Court cases were consolidated under Lead Case No. 37-2016-00019027-CU-FR-CTL before Judge Wohlfeil (the "State Court Action").    The State Court Action was extensively litigated and was set for trial.   The Defendants had moved to continue the trial date, and on January 23, 2019, Judge Wohlfeil issued tentative rulings denying Defendants' motion to continue trial and finding, among other things, that there was a "substantial probability" Plaintiffs would prevail on their fraud claims and be entitled to punitive damages.

Two hours after Judge Wohlfeil released his tentative order, using a petition that had been signed days earlier, on January 18, 2019, Pratt filed a voluntary petition under Chapter 13.

On January 24, 2019, the day after Judge Wohlfeil ruled, Pratt, via his counsel, Aaron Sadock, filed a Notice of Removal removing the State Court Action, including all Defendants, to the United States District Court for the Southern District of California. Pratt's alleged basis for removal was that the claims against him and the Non-Debtor Defendants were "related to" his bankruptcy proceeding.

On February 4, 2019, District Judge William Q. Hayes issued an Order to Show Cause as to why the removed case should not be referred to this Court (the "OSC").

In the bankruptcy case Plaintiffs filed a motion for relief from automatic stay and a motion shortening time. Pratt filed an opposition in response.   The Court granted the motion.   The February 14, 2019 Order validated all action taken in and by the District Court, to the extent necessary, and allowed the State Court to proceed if Judge Hayes remanded the case or if it was later remanded by this Court.

On February 15, 2019, Judge Hayes issued his order referring the case to this Court as Adversary Proceeding No. 19-90022-LT.

On February 22, 2019, in the removed and referred Adversary Proceeding Plaintiffs filed a motion to remand and a motion for order shortening time. Pratt did not file opposition.   On February 28, 2019, the Court entered an order remanding the State Court Action back to the State Court.   The Court specifically ruled that it "lacks subject matter jurisdiction over the adversary action as to the non-debtor defendants." ("Remand Order") 19-90022, Dkt. No. 16.   No one appealed from this order.

Plaintiffs now seek an award of attorneys' fees and costs against Pratt and his counsel Aaron Sadock ("Respondents") for the improper removal of the State Court Action under 28 U.S.C. § 1447(c) and the Court's inherent authority.

For the reasons set forth below, the Court is inclined to award fees and costs under § 1447(c) against Pratt.   The amount is subject to argument and perhaps an evidentiary hearing.   The Court may use its inherent powers to award fees and costs against attorney Aaron Sadock, but an evidentiary hearing is likely required.

## Standards

28 U.S.C.A. § 1447 provides in relevant part:

(c) An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

The Supreme Court in *Martin v. Franklin Capital Corp.*, explained the purpose and application of § 1447(c):

> The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.
>
> In light of these "large objectives," the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an

objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c).

546 U.S. 132, 140–41 (2005) (citations omitted). Attorney fee awards under section 1447(c) are remedial rather than punitive and, therefore, do not require a finding of bad faith. *Moore v. Permanente Med. Grp., Inc.,* 981 F.2d 443, 446 (9th Cir. 1992).

The Court has inherent authority to "assess attorney's fees when a party has " 'acted in bad faith, vexatiously,   wantonly, or for oppressive reasons.' " *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).   "Bad faith" is demonstrated where a party or attorney delays or disrupts the litigation or hampers enforcement of a court order. *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)(citing *Hutto v. Finney*, 437 U.S. 678, 689 n. 14 (1978)).

## Section 1447(c)

Respondents argue that they had an objectively reasonable basis for removal, because the Court potentially had jurisdiction over the State Court Action.   First, they argue that Pratt had a reasonable basis for removal as to himself because Plaintiffs' state court claims against him were "related to" his bankruptcy estate.   This seems clear.   Respondents go on to argue that the Court had "related to" jurisdiction over the claims against the other State Court Defendants because Plaintiffs' State Court pleadings allege that Defendants were acting in concert as tortfeasors, and are otherwise jointly liable, rendering Plaintiffs' claims against the Non-Debtor Defendants potential claims against the Debtor.   Not only does the Court disagree on the issue of jurisdiction, but it is inclined to rule that even if potential jurisdiction existed, this does not necessarily mean that there was an "objectively reasonable basis for seeking removal."

## Related to Jurisdiction

As noted, Respondents' only alleged source of jurisdiction over the claims of the non-Debtor Plaintiffs against the Non-Debtor Defendants is "related to" jurisdiction.   In essence, Respondents argue that if Plaintiffs obtain judgments against the Non-Debtor Defendants, those Non-Debtor Defendants might have claims for indemnification or contribution against Debtor, thus impacting his bankruptcy estate.

The Court has already rejected this theory and ruled that it lacked jurisdiction over the Non-Debtor Defendants.   See Remand Order.    A similar argument was also rejected by the Bankruptcy Appellate Panel in *In re Neff*, 2013 WL 1897019 (B.A.P. 9th Cir. May 7, 2013), in which the Panel affirmed the bankruptcy court's ruling that the only way potential indemnification or contribution could give rise to related to jurisdiction, would be if it were contractual:

A cursory review of the record supports the bankruptcy court's determination that it lacked "related to" jurisdiction over the Torts Action. Bankruptcy jurisdiction includes all civil proceedings that are "related to" bankruptcy cases. See 28 U.S.C. § 1334(b). A civil proceeding is "related to" a bankruptcy case if the outcome of the proceeding could conceivably have any effect on the administration of the bankruptcy estate. Fietz v. Great W. Sav. (In re Fietz), 852 F.2d 455, 457 (9th Cir.1988) (adopting the test in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984) (hereafter, "Fietz/Pacor ")).

Here, the bankruptcy court rejected Kwasigroch's alleged indemnity claim against Debtor and the bankruptcy estate as a basis for jurisdiction. It found that the possibility of an indemnity or contribution claim against Debtor or the estate, which existed only to the extent that Kwasigroch was first determined liable, was insufficient to establish jurisdiction. It noted that Kwasigroch's argument was precisely the argument rejected by the Pacor court.

In Pacor, the court determined that an action between non-debtor third parties had no effect on the debtor's bankruptcy estate. 743 F.2d at 995. It concluded that although the outcome of the subject action potentially gave rise to an indemnity claim against the estate, in the absence of contractual liability on the debtor's part, the outcome in the action would not definitively bind the debtor or determine its rights, liabilities, or next course of action. Id.

As the bankruptcy court here further noted, demonstrating that Debtor was contractually obligated to indemnify Kwasigroch might have established "related to" jurisdiction. Kwasigroch, however, never presented the bankruptcy court with evidence of the retention agreements establishing such contractual liability. He referenced the potential indemnity claim in various papers, but did not refer to or attach any such retention agreements….

Therefore, the bankruptcy court correctly concluded based on the only actual evidence before it that Kwasigroch's alleged indemnity claim was insufficient to establish "related to" jurisdiction under Fietz/Pacor as there was no evidence establishing actual contractual liability.

2013 WL 1897019, at *5–6.

Respondents' allegations of potential related to jurisdiction arise from allegations in the State Court Action of "civil conspiracy," "alter ego," and agency.   Respondents do not allege a contractual obligation to indemnify the Non-Debtor Defendants, and without that, any potential secondhand liability arising from the State Court Action is not necessarily sufficient to establish related to jurisdiction over the State Court Action with respect to the Non-Debtor Defendants.   The parties obviously know the litigation well; the Court does not.   But are the Defendants conceding such indemnity claims?   Are they being actively disputed in the case?

Respondents rely on the Sizzler case for the proposition that "[c]ontingent liability is enough to support "related to" jurisdiction under section 1452."   Unlike Neff, the

bankruptcy court in *Sizzler* did not require an "unconditional contractual obligation" to indemnify.   However, in *Sizzler* the corporate debtor had agreed to indemnify the non-debtor employee to the extent required under the Labor Code.   *In re Sizzler Restaurants Int'l, Inc.*, 262 B.R. 811, 818 (Bankr. C.D. Cal. 2001). In this case there is no evidence that Pratt has agreed to indemnify anyone.

In short, the Court has already ruled that it lacked jurisdiction over the Non-Debtor Defendants, and the case law supports this ruling.   There appears to be no objectively reasonable basis for removal of the State Court Action with respect to the Non-Debtor Defendants based on related to jurisdiction.   But, as discussed below, even if there was some belief that ephemeral related to jurisdiction existed, that does not end the analysis.

**Jurisdiction Does not Necessarily Establish Reasonable Removal**

Even if the Court potentially had jurisdiction over the claims against the Non-Debtor Defendants, the Panel in *Neff* went on to explain that a showing of potential related to jurisdiction did not necessarily protect a removing party from an award under § 1447(c):

> Even if jurisdiction existed, however, the result under these facts would be the same; and the bankruptcy court expressly so stated. Kwasigroch erroneously equates bankruptcy jurisdiction with an objectively reasonable basis for removal. In many instances, jurisdiction may supply an objectively reasonable basis for seeking removal. Here, however, "related to" jurisdiction would not justify removal. Kwasigroch is an attorney. He was an active participant at the hearing where the bankruptcy court expressly stated that it would not hear state court claims. He was aware of the *Stern* decision. The Torts Action involved only non-debtor parties and only state court causes of action.

Id. at *6.

The Court agrees.   Even if there was potential related to jurisdiction, the Court is inclined to conclude that Respondents had no possible objective belief that removal would result in the State Court Action being heard in this Court and that the removal was for the improper purpose of delaying the State Court action:

The State Court Action had been heavily litigated and had been set for trial. Extensive pre-removal litigation is a factor to be considered.   See *In re Kosovska*, 2016 WL 3769293, at *4 (B.A.P. 9th Cir. July 7, 2016).

The timing of the removal is also a factor.   See *World Sav. Bank, FSB v. Wu*:

> Although Pryce-Jones may have had some legitimate concerns related to the scheduling of the state court trial, removing the case a week before that trial is set to begin is not the proper vehicle for addressing those concerns. Counsel even admitted at the hearing that the timing of the removal was "not entirely coincidental." Furthermore, Defendant's arguments for asserting diversity jurisdiction are on shaky grounds both legally (with respect to WSB) and factually

(with respect to Wu). Accordingly, the court finds that an award of reasonable attorney's fees is appropriate.

2008 WL 1994881, at *3 (N.D. Cal. May 5, 2008).   Here, the case was removed shortly before trial was to have begun and after the State Court judge had tentatively ruled against Pratt and the Non-Debtor Defendants on a critical issue.

There is not a chance that this Court would not have remanded; who would reasonably assume that the Court would redo the work of the Superior Court or second guess its determinations to date?   And the choice of a chapter 13 filing underscores that the Court would not have waited to try the case itself.   Chapter 13 cases must move quickly to confirmation.   This Court would not have had the ability to recreate a trial setting for a case that had been pending for years and was poised for trial.

Respondents argue that their removal was reasonable because they consulted with bankruptcy counsel:

Before moving to remove the State Court Action to District court, Mr. Sadock consulted Milberg & De Phillips, P.C. attorney Russ De Phillips, who has been practicing bankruptcy law since 1981.   Based on the consultation with Mr. De Phillips, Pratt decided to seek removal of all Defendants in the State Court Action.

However, neither Respondents nor the bankruptcy consultants provide any specifics about the consultation or the advice given.   Neither Mr. Sadock nor Mr. De Phillips provide any details of the advice sought or given.   The Court can only surmise that Respondents got little actual advice from experienced bankruptcy counsel as they removed the matter to the District Court despite a standing order referring all bankruptcy matters to the bankruptcy courts, and they asserted that the automatic stay in Pratt's bankruptcy case extended to the Non-Debtor Defendants – an assertion that is so obviously unsound that it defies belief.

Debtor abandoned his bankruptcy case once the case was remanded indicating that the filing and removal was solely for the purposes of delaying the State Court litigation.

Thus, even if related to jurisdiction did exist, these factors could lead the Court to conclude that Respondent had no objective belief that removal was proper or that it would result in the State Court Action being heard in any federal court, including this one.   The Court acknowledges that this determination could require an evidentiary hearing; the Court would be pleased to hold one promptly.

**Award Against Counsel**

The Court is inclined to agree with Respondents that an award under § 1447(c) is not available as against Mr. Sadock.   See *Pack v. Hoge Fenton Jones & Appel, Inc.*:

This leaves the issue of who should pay under 28 U.S.C. § 1447(c), Mr. Pack or his counsel. District courts are divided on the issue, see *In re Crescent City*

> *Estates, LLC,* 588 F.3d 822, 825 (4th Cir.2009) (collecting cases), and the Ninth Circuit has yet to address it. In Crescent City, the Fourth Circuit held that the party, not the attorney should be held liable under § 1447(c). Id. The Court reasoned that the "American rule"—which provides that the prevailing litigant is ordinarily not entitled to collect attorney fees from the loser—"creates the presumption that parties bear their own legal cost, win or lose" and, absent explicit authorization from Congress, courts should "keep the American rule intact."5 Id. at 825–826. The Court finds this reasoning persuasive.

> Accordingly, the Court awards Defendants $5,000 in attorneys' fees in connection with Mr. Pack's improper removal. This amount is to be assessed against Mr. Pack alone.

2013 WL 140027, at *7–8 (N.D. Cal. Jan. 10, 2013).

However, given the evidence that Mr. Sadock masterminded and directed the removal, the Court may be inclined to sanction him under the Court's inherent powers which the Court may use if the statutory schemes available are found wanting.   See *In re DeVille*,:

> Smith and Miller argue that the existence of Rule 11of the Federal Rules of Civil Procedure and its bankruptcy twin, Rule 9011, severely limited the court's authority to impose sanctions via its inherent *551 power. In discussing the foundation of a federal court's inherent power, the Supreme Court has emphatically rejected the notion that the advent of 28 U.S.C. § 1927 and the sanctioning provisions in the Federal Rules of Civil Procedure displaced the inherent power to impose sanctions for bad faith conduct. See Chambers, 501 U.S. at 49–50, 111 S.Ct. 2123 (holding that a court "may safely rely on its inherent power" as a sanctioning tool in instances when statutes or rules prove inadequate to remedy misconduct). We agree with the BAP's conclusion that, given the inadequacy of rules and statutes to sanction Smith and Miller's misconduct, the bankruptcy court correctly relied upon its inherent power as a sanctioning tool.

361 F.3d 539, 550–51 (9th Cir. 2004).   The Court will hear argument. If the Court is inclined to consider an award against counsel, it may file its own OSC to ensure due process. See *In re Pham*, 2017 WL 5148452, at *6 (B.A.P. 9th Cir. Nov. 6, 2017).   In the alternative, it may simply issue a scheduling order that allows counsel time to respond directly to the claims against him and to engage his own attorney if he deems it appropriate, if it concludes that this passes due process muster.

**Inherent Power Sanctions for Bad Faith**

Movants also request an award of sanctions under the Court's inherent authority, arguing that the removal was part of a bad faith effort to delay the State Court action. The Court may so determine after an evidentiary hearing. The question is whether this type of improper activity should be policed here or by the State Court.   The record is clear as to what Respondents did here and in the District Court, but the State Court may

be in the best position to determine the effect Respondents efforts had on its proceeding and to award sanctions as appropriate in connection with the State Court Action.

**Amount of the Award**

The Court is inclined to award fees and costs under § 1447(c) if the Court finds that it never had jurisdiction over the claims of the non-Debtor Defendants, and, in any event, if it determines that Respondents had no reasonable objective basis for removal, and particularly not to the District Court.   However, the fees and costs may be less than those sought by Movants.   The only fees and costs awarded may be limited to those directly related to the removal and efforts to get the action back to the State Court.   See *Avitts v. Amoco Prod. Co.*:

> Once a court determines that the removal was improper, thus satisfying the Miranti threshold requirement, § 1447(c) gives a court discretion to determine what amount of costs and fees, if any, to award the plaintiff. Congress has plainly limited such an award to those costs and fees "incurred as a result of removal." See 28 U.S.C.A. § 1447(c)(West 1994). We interpret this language to limit the litigation expenses that may be awarded under this section to fees and costs incurred **in federal court** that would not have been incurred had the case remained in state court. This interpretation of the plain language of § 1447(c) is buttressed by its legislative history. For example, the House Report states that § 1447(c) "will ensure that a substantive basis exists for requiring payment of actual expenses incurred in resisting an improper removal; civil rule 11 can be used to impose more severe sanction when appropriate." H.R.Rep. No. 100-889, reprinted in 1988 U.S.C.A.N. 6033.

> We conclude therefore that a party's costs of opposing removal, seeking remand, and other expenses incurred because of the improper removal may be awarded. By contrast, ordinary litigation expenses that would have been incurred had the action remained in state court are not recoverable because such expenses are not incurred "as a result of the removal."

111 F.3d 30, 32 (5th Cir. 1997).   (emphasis added).

The Court will likely require an evidentiary hearing on the amount of the fees and costs to be awarded.   The Court is inclined to award all fees and cost incurred in the effort to return the case to the State Court, including seeking relief from the stay to ensure that the District Court could take all necessary steps to remand or transfer the case to this Court.   See Dkt. No. 33, in which the Court granted nunc pro tunc relief to ensure the actions taken by Judge Hayes were not impacted by the stay.   To the extent that the removal *qua* delaying tactic increased the Plaintiffs' costs of prosecuting the action in the State Court, Plaintiffs should be prepared to argue as to why those costs are appropriately awarded here and if the Court must exercise its inherent authority to do so.