Joanna L. Storey, Esq.  (SBN 214952)
HINSHAW & CULBERTSON LLP
One California Street, 18th Floor
San Francisco, CA 94111
Phone:  (415) 393-0137
E-mail: jstorey@hinshawlaw.com

Attorneys for Respondents Aaron Sadock
and Panakos Law APC

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>    MICHAEL J. PRATT<br><br>          Debtor<br><br>JANE DOE NOS. 1 - 22,<br><br>          Plaintiffs,<br><br>    v.<br><br>MICHAEL J. PRATT, et al.,<br><br>          Defendants. | Case No. 19-00271-LT13<br><br>Chapter 13<br><br>Hon. Laura S. Taylor<br><br>**RESPONDENT AARON SADOCK'S RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Hearing Date:  June 10, 2019<br>Hearing Time:  10:00 AM<br>Location:  Department 3<br>Judge Laura S. Taylor |

**1.    Summary of Argument**

The Order to Show Cause (the "Order") places Respondent Aaron Sadock squarely within the quintessential predicament. To fully explain why Mr. Sadock believed he had a reasonable basis to remove the State Court Action to the U.S. District Court, Mr. Sadock must disclose privileged communications. Yet, maintaining privilege is not only of paramount importance to the attorney-client

relationship, but is also Mr. Sadock's essential professional duty. The privilege extends not only to communications between Mr. Sadock and Mr. Pratt, but also to communications between Mr. Sadock and Russell De Phillips, with whom Mr. Sadock consulted in furtherance of the attorney-client relationship and to accomplish the due diligence necessary before moving to remove the State Court Action[1]. Because privileged discussions with Mr. Pratt and Mr. De Phillips formed the basis for Mr. Sadock's reasonable belief that removal to the U.S. District Court was proper, Mr. Sadock's professional duty precludes him from offering further evidentiary support for his decision.

Setting aside the privilege issue, this Court is familiar with the legal arguments Mr. Pratt and Mr. Sadock offered with respect to why there was an objectively reasonable basis for seeking removal, which was set forth in Defendants' Opposition to Plaintiffs' Motion for Sanctions. Docket No. 61. Mr. Sadock will not re-litigate those arguments here. The law is clear, however, that an attorney is not subject to the fee shifting provision of Section 1447(c). Moreover, because Section 1447(c) offers a specific remedy for an improper removal, Mr. Sadock respectfully requests that the Court exercise restraint in considering whether to exercise its inherent power to sanction.

Finally, should the Court issue sanctions, the fees and costs the State Court Action Plaintiffs seek are excessive and unsupported. The matter was removed on January 24, 2019, and remanded on February 22, 2019, a mere 29 days later. Incurring over $160,000 in attorneys' fees and costs for work performed over the course of less than one month for garden variety motions for relief from stay and for remand shocks the conscious. This Court has unambiguously stated that it found no objectively reasonable basis to remove the State Court Action. Given the apparent

---

[1] Mr. De Phillips fee for the consultation was in excess of $20,000.

2

**RESPONDENT AARON SADOCK'S RESPONSE TO ORDER TO SHOW CAUSE**
Case No. 19-00271-LT13

303773680v1 1018752

obvious lack of reasonable basis, there is no justification for Plaintiffs incurring fees and costs anywhere near the $160,000 sought to accomplish the remand. Here, given the facts, an award of $10,000 or less is far more reasonable and justified.

**2.  Mr. Sadock Should not be Sanctioned Because the Attorney-Client Privilege Precludes Him from Providing Additional Evidence Regarding the Decision to Remove**

The attorney-client privilege is the foundation of our legal system. "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "[T]he public policy fostered by the privilege seeks to insure 'the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense.'" *Solin v. O'Melveny & Myers*, 89 Cal.App.4th 451, 457 (2001) (*quoting Baird v. Koerner*, 279 F.2d 623, 629 (9th Cir. 1960).

Mr. Sadock must "maintain inviolate" confidential client communications. Bus. & Prof. Code §6068(e)(1); California Rules of Professional Conduct Rule 1.6. The attorney-client privilege is codified in California Evidence Code section 954. Evidence Code section 952 broadly defines "confidential communication between client and lawyer" as,

> information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, *and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.*

3

**RESPONDENT AARON SADOCK'S RESPONSE TO ORDER TO SHOW CAUSE**
Case No. 19-00271-LT13

303773680v1 1018752

(Italics added). *See also*, *Fireman's Fund Ins. Co. v. Superior Court*, 196 Cal.App.4th 1263, 1274 (2011) [attorney-client privilege covers both confidential communications between attorneys and legal opinion formed by an attorney].

Here, Mr. Sadock is duty bound to not disclose his communications with Mr. Pratt regarding the decision to remove. Mr. Sadock also consulted with bankruptcy expert Russell De Phillips, on Mr. Pratt's behalf, regarding grounds for removal. Docket No. 61-4 (¶4). This consultation fits squarely within the four corners of privileged communications. Because Mr. Sadock's privileged discussions with Mr. Pratt and Mr. De Phillips formed the basis for Mr. Sadock's reasonable belief that removal to the U.S. District Court was proper, Mr. Sadock's professional duty precludes him from offering further evidentiary support for his decision. *See*, *e.g.*, *Solin v. O'Melveny & Myers,* 89 Cal.App.4th 451 (2001) [lawsuit dismissed because law firm could not mount a defense without breaching privilege].

Accordingly, Mr. Sadock and Mr. De Phillips cannot (by law) offer any further evidentiary support for the decision to remove.

### 3. Mr. Sadock Should Not Be Sanctioned for Mistakenly Remanding the Matter to U.S. District Court

This Court is familiar with the arguments Mr. Pratt and Mr. Sadock offered with respect to why there was an objectively reasonable basis for seeking removal, which was set forth in Defendants' Opposition to Plaintiffs' Motion for Sanctions. Docket No. 61. While Mr. Sadock will not re-litigate those issues here, the following reasons highlight why sanctions against him are not warranted.

#### a. Mr. Sadock Did Not Initiate the Bankruptcy

One, Mr. Sadock should not be sanctioned for Mr. Pratt's decision to file bankruptcy for the simple reason that the bankruptcy was initiated by a different attorney (Ahren A. Tiller, a Certified Bankruptcy Law Specialist). Docket No. 62-1,

4
**RESPONDENT AARON SADOCK'S RESPONSE TO ORDER TO SHOW CAUSE**
Case No. 19-00271-LT13

303773680v1 1018752

at pp. 8, 12, 14. Mr. Sadock should not be sanctioned for an action that he did not personally undertake.

### b. Legal Authority Supports the Decision to Remove All State Court Defendants

The basis for seeking removal was supported by *In re Fietz*, 852 F.2d 455 (9th Cir. 1988). The *Fietz* standard is more than broad enough to encompass the non-debtor Defendants and render the claims against them removable because of Plaintiffs' allegations that purport to create joint liability against all Defendants could "alter the debtor's rights, liabilities, options, or freedom of action." See *Fietz*, 852 F.2d at 457. Here, the State Court Action alleged that Mr. Pratt and the non-debtor Defendants engaged in a **civil conspiracy** to commit the underlying torts. Docket No. 61-1 at pp. 28 (¶ 150), 30 (¶162), 26 (¶174), 34 (¶188), 30 (¶197) and 31 (¶203) ("The Defendants also acted in a conspiracy when they committed this [tort] . . .").) Coconspirators are equally liable for the acts of all other coconspirators. *Nero v. Evans*, 2011 U.S. Dist. LEXIS 73756, at *23-24 (S.D. Cal. July 8, 2011) (*quoting Applied Equip. Corp. v. Litton Saudi Arabia Ltd*., 7 Cal. 4th 503, 510-11 (1994)). Accordingly, if Plaintiffs were to recover against any of the non-debtor Defendants under that doctrine, Mr. Pratt would be equally liable as a coconspirator. Such liability would result in another claim against Mr. Pratt's estate and thus "[affect] . . . the estate being administered in bankruptcy" sufficient to exercise "related to" jurisdiction. See *Fietz*, 852 F.2d at 457. Thus, Mr. Sadock was justified in believing he had a reasonable basis to remove the State Court Action.[2]

---

[2] The Order focuses on the issue of indemnity rather than conspiracy, and compares a potential claim for indemnity from the non-debtor defendants to a proof of claim filed by Plaintiffs, suggesting the two are the same. However, if Mr. Pratt were to allow the State Court Action to proceed to trial without him and then "accept a proof of claim" filed by Plaintiffs, he would be deprived of due process to defend against the merits of both the conspiracy and indemnity aspects of the claims.

5

**RESPONDENT AARON SADOCK'S RESPONSE TO ORDER TO SHOW CAUSE**
Case No. 19-00271-LT13

In hindsight, perhaps Mr. Sadock was wrong on this issue. However, an error or mistake in the law is not sufficient grounds to issue sanctions. Inherent power sanctions cannot be awarded without an explicit finding of bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-50 (1991) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)); *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1197 (9th Cir. 2003). While Plaintiffs infer, based on the timing of the removal that Mr. Sadock's decision was made in bad faith, no evidence supports their speculation. Notably, the State Court Action tentative ruling that Plaintiffs contend precipitated the bankruptcy was granted in part and denied in part, with all sanctions requests being denied because the parties acted with substantial justification. Docket No. 43, at pp. 15-20. Moreover, filing a bankruptcy action to stay a discovery order would make no sense because filing a petition for writ of mandamus would appropriately accomplish the same goal.

### c. The Court Should Rely on the Sanction Rules Available and Refrain from Invoking its Inherent Power

Although it is true that courts can invoke inherent power in order to award sanctions, that power "must be exercised with restraint and discretion." *Chambers, supra,* 501 U.S. at 44 (citing *Roadway Express, Inc., supra,* 447 U.S. at 764). When litigation conduct can be "adequately sanctioned" via a statute or rule, "the court ordinarily should rely" on those statutes or rules. *Chambers*, *supra,* 501 U.S. at 50. Here, the conduct at issue is solely related to the purportedly improper removal. Section 1447(c) was expressly designed to provide recourse to parties aggrieved by improper removals. See, e.g., *Watson v. Charleston Housing Auth.*, 83 F. Supp. 2d 709, 712 (S.D.W. Va. 2000) (citing *Liebig v. DeJoy, 814 F. Supp.* 1074, 1077 (M.D. Fla. 1993) ["The purpose [of section 1447(c)] is to reimburse a party for the costs associated with responding to an improper removal."]. Accordingly, because section 1447(c) is "up to the task" of sanctioning the purportedly improper removal, the

Court should not, and need not, invoke its inherent power. See *Chambers*, supra, 501 U.S. at 50.

### d. Attorney's Cannot be Sanctioned Under 1447(c)

Should the Court award sanctions in favor of Plaintiffs and against Mr. Pratt pursuant to Section 1447(c), the purpose of that section will be satisfied. Mr. Sadock, however, cannot be sanctioned under Section 1447(c). See *Pack v. Hoge Fenton Jones & Appel, Inc.*, 2013 U.S.Dist.LEXIS 4241 (N.D.Cal. Jan. 10, 2013), citing to *MR Crescent City, LLC v. Draper*, 588 F.3d 822 (4th Cir. 2009). Since the intent of a Section 1447(c) award is to compensate the non-removing party for the expense they incurred because of the improper removal, assessing additional sanctions against Mr. Pratt's attorney would frustrate the purposes of Section 1447(c).

### 3. Plaintiffs Failed to Satisfy Their Burden to Establish Reasonable Fees and Costs

Regardless of whether sanctions are awarded under section 1447(c) or the Court's inherent power, the amount of sanctions can only reflect fees incurred as a result of the removal. *Goodyear Tire & Rubber Co. v. Haeger,* 137 S.Ct. 1178, 1186 (2017) [inherent power sanctions must "establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party"]; *Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997) [limiting awardable sanctions under section 1447(c) to "fees and costs incurred in federal court that would not have been incurred had the case remained in state court"].

Plaintiffs have the burden to document "the appropriate hours expended." *Braco v. MCI Worldcom Communs., Inc.*, 138 F.Supp.2d 1260, 1271 (C.D. Cal. 2001) (quoting *Hensley v. Eckerhart*, 103 S.Ct. 1933 (1983)). Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded. *Braco*, *supra*, 138 F.Supp.2d at 1271 (quoting *Van Gerwen v. Guarantee Mutual Life Co.*, 214

7
**RESPONDENT AARON SADOCK'S RESPONSE TO ORDER TO SHOW CAUSE**
Case No. 19-00271-LT13

303773680v1 1018752

F.3d 1041, 1045 (9th Cir. 2000). Moreover, a reasonable attorney fee is based on what would be charged by "reasonably competent counsel," rather than counsel of "unusual skill and experience." *Albion Pac. Prop. Res., LLC v. Seligman*, 329 F.Supp.2d 1163, 1169 (N.D.Cal. 2004) ["Reasonably competent counsel bill a reasonable number of hours at a reasonable hourly rate"].

Here, the obviously excessive fee request is unreasonable for three reasons: (1) the request includes fees and costs unrelated to the removal; (2) the purported hourly rates are unconscionable; and, (3) the request lacks proper evidentiary support.

### a. Plaintiffs' Fee Request Includes Tasks Unrelated to the Removal

When fees are awarded, only expenses incurred as a result of the removal are recoverable. Ordinary litigation expenses are not recoverable. *Avitts*, *supra*, 111 F.3d at 32. Here, Mr. O'Brien was the only attorney who documented the specific tasks that were allegedly performed because of the removal. Docket No. 43, at pp. 10-13. Of those line items, the following are *some* examples of tasks that were either unrelated to removal or patently excessive:

| Date | Task | Time | Reason |
|---|---|---|---|
| 1/23/19 | Meeting with Ed Chapin re: Pratt Notice of Bankruptcy | 0.5 | Inter-office meetings are typically not billable |
| 1/24/19 | Meeting with Ed Chapin and Brian Holm re: State Court tentative rulings | 1.5 | Unrelated to removal |
| 1/23/19 | Travel to/Attend State Court tentative rulings | 1.0 | Unrelated to removal |
| 2/7/19 | Email correspondence with all counsel re: defendants and defense | 0.2 | Unrelated to removal |

8
**RESPONDENT AARON SADOCK'S RESPONSE TO ORDER TO SHOW CAUSE**
Case No. 19-00271-LT13

303773680v1 1018752

| Date | Task | Time | Reason |
|---|---|---|---|
| | counsel/creditors' conflicts of interest | | |
| 2/14/19 | Meeting with Ed Chapin, Cara Van Dorn, and Brian Holm re: strategy for federal district removal and bankruptcy action | 1.0 | Excessive time |
| 2/15/19 | Email correspondence with all counsel re: settlement | 0.2 | Unrelated to removal |
| 2/10/19 | Telephone correspondence with all co-counsel re: strategy for federal district removal and bankruptcy action | 1.2 | Excessive time |
| 2/22/19 | Telephone correspondence with all co-counsel re: strategy for federal district removal and bankruptcy action | 1.2 | Excessive time |

The overall time Mr. O'Brien spent is also excessive, as he merely prepared garden variety motions for relief from stay and to remand. Thus, a more reasonable number of billed hours for this work should have been, at most, 20 hours. Notably, it is evident from Mr. O'Brien's declaration that he was the primary attorney managing Plaintiffs' efforts to remand the action. Accordingly, the amounts billed by others on Mr. O'Brien's team are also unreasonable and unwarranted.

Mr. Holm declares that he has or *will* spend at least 85 hours of work that he contends is directly related to the removal. Docket No. 45, at p. 5 (¶12). But in a footnote Mr. Holm concedes that 30 hours of that time *will be* for future travel for a deposition. The fee associated with the 30 hours is not only unrecoverable as

9

**RESPONDENT AARON SADOCK'S RESPONSE TO ORDER TO SHOW CAUSE**
Case No. 19-00271-LT13

303773680v1 1018752

sanctions, but is also clearly excessive. A roundtrip flight from San Diego to New York does not take 30 hours. Moreover, one can perform other work during travel, and since trial is imminent in this matter, Mr. Holm's time would be more efficient if he prepared for trial, or the depositions, during travel. Mr. Holm also concedes that some of the time he seeks relates to other discovery in the State Court Action. Docket No. 45, at p. 4 (¶10). While it is self-evident that Mr. Holm's unsupported time is excessive given that he claims he spent nearly three times as much time as Mr. O'Brien (the primary attorney handling the remand efforts), Mr. Sadock's ability to evaluate Mr. Holm's fee request is frustrated by Mr. Holm's complete failure to itemize the tasks he performed. Without a line item statement, Mr. O'Brien's request for fees must be denied.

Likewise, the purported billable time set forth in Mr. Chapin's declaration is wholly unsupported. The 125.45 hours spent by Ms. Van Dorn is especially suspect. It is difficult to imagine how an attorney could spend nearly sixty hours researching legal and procedural issues related to improper removal, and then spend an outrageous *additional* 54.25 hours drafting motions and declarations as to the same matters. *See* Docket No. 44, at p. 2 (¶4). That Ms. Van Dorn spent an *additional* 28 hours discussing the issues with co-counsel shocks the conscious, and is inconsistent with the time documented by Messrs. O'Brien and Chapin. An evidentiary hearing on the work purportedly performed by Mr. Chapin, Ms. Van Dorn, Christopher Yandel and the legal assistants referenced in Mr. Chapin's declaration is clearly needed.[3]

See also, Docket No. 61, at pp. 12-15, for additional problems with Plaintiffs' fee support, which will not be repeated in full here.

---

[3] As mentioned above, given the Court's assertion that the lack of a reasonable basis for removal was obvious, Plaintiffs are unable to justify the amount purportedly incurred to remand the matter.

10
**RESPONDENT AARON SADOCK'S RESPONSE TO ORDER TO SHOW CAUSE**
Case No. 19-00271-LT13

303773680v1 1018752

### b. Plaintiffs' Counsel Purported Hourly Rates are Unreasonable and Shock the Conscious

An improper removal fee award must be based on a reasonable hourly rate. See, e.g. *Albion Pac. Prop. Res., LLC, supra,* 329 F. Supp.2d 1163. In *Albion*, the Northern District of California established guidelines for motions for fees and costs on remand, and, at that time, approved a $190/hr. billing rate for attorneys. Acknowledging that the market rate has increased since then, adding a generous 50% to the rate results in a current rate of $285/hr., which is a reasonable blended rate for partners and associate attorneys in the San Diego Area.

The rates offered by counsel in this action, however, are unreasonable, and, for some, shock the conscious:

| Name | Bar Number | Admission[4] | Rate | Hours | Fee |
|---|---|---|---|---|---|
| **Ed Chapin** | 53287 | 1972 | **$950** | 29.7 | $28,215 |
| **Michael T. O'Halloran** | 99085 | 1981 | $450 | N.P.[5] | $9,600 |
| **Jeffrey Cawdrey** | 120488 | 1985 | $550 | N.P. | $9,945 |
| **Megan Adeyemo** | [not licensed in CA] | | $450 | N.P. | [see above] |
| **John J. O'Brien** | 253392 | 2007 | $355 | 28.8 | $13,744 |
| **Brian M. Holm** | 255691 | 2008 | $300 | 85 | $25,500 |
| **Cara Van Dorn** | 321669 | **2018** | **$425** | 125.45 | $53,316.25 |
| **Christopher Yandel** | 319961 | **2018** | **$400** | 23.8 | $9,520 |
| **Legal assistants** | | | **$275** | 18.5 | $5,087.50 |

---

[4] Years of admission and bar numbers were obtained from The State Bar of California's website, at http://members.calbar.ca.gov/fal/LicenseeSearch; accessed May 25, /2019.

[5] Not Provided.

11

**RESPONDENT AARON SADOCK'S RESPONSE TO ORDER TO SHOW CAUSE**
Case No. 19-00271-LT13

303773680v1 1018752

Plaintiffs' counsel's hourly rates are patently unreasonable due to the excessive amount and the absence of a lodestar breakdown. See *Albion Pac. Prop. Res., LLC, supra,* 329 F. Supp. 2d at 1166 ["In the Ninth Circuit, courts use the lodestar method to calculate reasonable attorney awards under fee-shifting statutes [including section 1447(c)]."]; *Leverty & Assocs. Law Chtd. v. Exley*, No. 3:17-cv-00175-MMD-WGC, 2018 U.S. Dist. LEXIS 221766, at *45 (D. Nev. Nov. 5, 2018) (citing cases) ["In cases where attorney's fees are awarded as a sanction under the court's inherent power, courts have applied traditional methods for calculating the fee award, including reference to local rules and the lodestar analysis"].

For example, it is difficult to conceive how an attorney who claims to have the legal ability and experience to be worth a whopping $950 per hour (Mr. Chapin) could devote 29.7 hours in a single month in an effort to remand a case that this Court stated clearly should not have been removed. Moreover, the hourly rate for the two first year attorneys shocks the conscious and the rate for legal assistants exceeds that of the reasonable attorney rate permitted in the Northern District (*Albion*). The rates are also excessive based on a survey of recent cases allowing for sanctions for improper removal:

| Case | Venue/Date | Result |
|---|---|---|
| *LA Wave, LLC v. 55 Trading Corp*. <br><br>**2017 U.S.Dist.LEXIS 126390** | Central District <br><br> Aug. 9, 2017 | 11 hours at $175 per hour reasonable; Awarded $1,925 |

| Case | Venue/Date | Result |
|---|---|---|
| *Kosovska v. Max Default Servs. Corp.*<br><br>**2016 Bankr. LEXIS 2539** | Bankr.9th Cir.<br><br>July 7, 2016 | Affirmed Award of $1,459.50 for improper removal after bankruptcy filing where Court implied the removal a tactical decision to stay state court action |
| *Pack v. Hoge Fenton Jones & Appel, Inc.*<br><br>**2013 U.S.Dist.LEXIS 4241** | Northern District<br><br>Jan. 10, 2013 | $450, $305, and $275 respectively for the senior partner, junior partner, and associate were reasonable; Awarded $5,000 |
| *Williams v. Ruan Transp. Corp.*<br><br>**2013 U.S.Dist.LEXIS 176327** | Eastern District<br><br>Dec. 16, 2013 | "The court may reduce those hours where a case is overstaffed and hours are duplicated and where the hours expended are deemed to be excessive."<br><br>12 hours at $375 per hour for senior attorney and 20 hours at $325 per hour for the junior attorney were reasonable.<br><br>Requested $54,120; Awarded $11,000 |
| *Medina v. Performance Auto. Group, Inc.*<br><br>**841 F.Supp.2d 1121** | Eastern District<br><br>2012 | Requested $20,000; Awarded $3,000 |

| Case | Venue/Date | Result |
|---|---|---|
| *Tvia, Inc. v. Silva*<br><br>**2008 WL 3843212** | Northern District<br><br>Aug. 15, 2008 | (1) The Defendants misrepresented the residence of one Defendant as an improper basis for diversity jurisdiction; (2) The Defendants willfully ignored and misinterpreted clear securities law with respect to the purported federal question; (3) The Defendants refused to remand unless Tvia agreed to waive costs; (4) The Defendants refused to remand unless Tvia agreed the defendants could file a demurrer after remand; and, (5) The Defendants opposed the remand motion. The defendants also kept a motion to dismiss on calendar, forcing Tvia's counsel to file the motion for remand.<br><br>To put this issue into perspective, the *Tvia* court awarded $11,742.50 in fees and costs in a case that involved litigation of three motions and in which the Defendants affirmatively misrepresented facts to the court. That award was dramatically less than the more than $160,000 Plaintiffs seek in this action. |
| *Albion Pac. Prop. Res., LLC v. Seligman*<br><br>**329 F.Supp.2d 1163, 1169** | Northern District<br><br>2004 | Requested $81,288.96; Awarded $27,956.36 |

14

**RESPONDENT AARON SADOCK'S RESPONSE TO ORDER TO SHOW CAUSE**
Case No. 19-00271-LT13

| Case | Venue/Date | Result |
|---|---|---|
| *Braco v. MCI Worldcom Communs., Inc.* <br> 138 F.Supp.2d 1260 | Central District <br><br> 2001 | Requested $15,295; Awarded $7,500 ($200/hr x 37.5 hours) |
| *Dead Kennedys v. Biafra* <br> 46 F.Supp.2d 1028 | Northern District <br><br> 1999 | Awarded $12,160.50 |

### c. Plaintiffs Failed to Provide Evidentiary Support for the Amount of Fees Requested

In California, a lawyer shall not charge an unconscionable fee. Cal. Rules Prof. Conduct, Rule 1.5(a). Relevant factors to determine whether a fee is unconscionable include: "the amount of the fee in proportion to the value of the services performed," "the relative sophistication of the lawyer and client," "the novelty and difficulty of the questions involved," and "the time and labor required." *Id.*, Rule 1.5(b). Balancing these factors, it clear that charging $160,000 for less than a month of work on garden variety remand issues is unconscionable. It is doubtful that counsel would actually charge the Jane Doe Plaintiffs anywhere near that amount for their remand efforts – and if they did, they may be subject to discipline. That all counsel, with the exception of Mr. O'Brien, failed to provide their billing entries to support the motion for sanctions is a tacit admission that the tasks were not performed.

Plaintiffs clearly inflated their attorneys' time to take advantage of the Court's willingness to order Mr. Pratt and/or Mr. Sadock to pay Plaintiffs fees and costs.

Should the Court consider sanctions in excess of $10,000, a full evidentiary hearing on the fees and costs incurred should be required.

### 4. Conclusion

For the foregoing reasons, Mr. Sadock respectfully requests that the Court refrain from issuing sanctions against him in this instance. While, in hindsight, removing the matter may have been a mistake, Mr. Sadock noticed the removal because he reasonably believed there were grounds to do so following consultation with an experienced bankruptcy attorney. Should the Court award *reasonable* fees pursuant to Section 1447(c) against Mr. Pratt, the State Court Action Plaintiffs will be made whole.

Dated May 28, 2019                                **HINSHAW & CULBERTSON LLP**

*/s/ Joanna L. Storey*
Joanna L. Storey, Esq.
*Attorneys for Respondents
Aaron Sadock and
Panakos Law APC*